COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Willis


SHIRLEY P. KEESEE
                                         MEMORANDUM OPINION*
v.    Record No. 2273-99-3                   PER CURIAM
                                          FEBRUARY 8, 2000
WISE COUNTY SCHOOL BOARD AND
 VIRGINIA MUNICIPAL GROUP
 SELF-INSURANCE ASSOCIATION


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          (P. Heith Reynolds; Wolfe & Farmer, on
          brief), for appellant.

          (James R. Hodges; White, Bundy, McElroy,
          Hodges, on brief), for appellees.


     Shirley P. Keesee contends that the Workers' Compensation

Commission erred in finding that she failed to prove that her

medical treatment after July 17, 1996 and her disability

beginning February 20, 1998 were causally related to her

compensable July 15, 1996 injury by accident.  Upon reviewing

the record and the briefs of the parties, we conclude that this

appeal is without merit.  Accordingly, we summarily affirm the

commission's decision.  See Rule 5A:27.

     On appeal, we view the evidence in the light most favorable

to the prevailing party below.  See R.G. Moore Bldg. Corp. v.

Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

_____

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Unless we can say as a matter of law that Keesee's evidence sustained her burden of proof, the commission's findings are binding and conclusive upon us.  See Tomko v. Michael's Plastering. Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

In holding that Keesee failed to sustain her burden of proof, the commission found as follows:

> Although [Keesee] testified that she continuously complained to Dr. [R. Michael] Moore for a year and a half about her headaches, dizziness, and nausea, the extensive medical record reflects otherwise. [Dr. Moore] frequently treated [Keesee] for various conditions.  Noticeably absent from Dr. Moore's office notes are the symptoms which first appeared in February 1998 and subsequently prompted him to recommend a neurological evaluation.  Indeed [Keesee] complained of dizziness, but this was on June 19, 1996, prior to the fall.  When Dr. Moore examined [Keesee] on July 17, 1996, after the fall, he did not note any loss of consciousness or any type of knot or head injury. . . .  Contrary to [Keesee's] testimony, Dr. Moore did not report complaints of head throbbing or that [Keesee's] head hit the floor.  From October 19, 1996 to January 24, 1998, there was no indication of headaches or dizziness. Instead, [Keesee] reported various other problems . . . .  We are not convinced that she has suffered her current symptoms since the fall and has consistently reported them to Dr. Moore.

> The first report of symptoms with neurological implications was on February 19, 1998. . . .  Dr. Moore did not link the symptoms to the fall at this time.  Unlike [Dr. Moore's] initial assessment in July 1996, the February 26, 1998, notes describe the fall as a head injury and that it completely knocked [Keesee] out.  Contrary

- 2 -

to Dr. Moore's records, Dr. [John] Stamoulis' initial examination on February 27, 1998, reported that one year ago, [Keesee] developed dull headaches, radiating pain, and upper extremity shakiness. Most significantly, [Dr. Stamoulis] noted that [Keesee] denied suffering a head trauma. . . .

. . . We are more persuaded by Dr. Stamoulis' reluctance to link [Keesee's] problems to the job injury "considering her complaints began much after her injury." Dr. [Paul C.] Peterson's causative link is based upon the belief that [Keesee] had no symptoms until the accident and then they presumably started. As stated, the only remotely neurologic symptom (dizziness) was noted prior to the fall and then not again until 19 months later. Other alleged related symptoms were not recorded by Dr. Moore. Further, Dr. Wood clearly disagreed that [Keesee's] conditions were related to the July 15, 1996, fall.

The commission's factual findings are amply supported by the medical records. Those findings support the commission's conclusion that Keesee's current neurologic complaints did not begin until at least nineteen months after her July 1996 accident. The commission, as fact finder, was entitled to give little probative weight to the contrary testimony of Keesee and her daughter with respect to when Keesee's symptoms began. Moreover, the commission articulated legitimate reasons for accepting the opinions of Drs. Stamoulis and Wood and for rejecting the contrary opinions of Drs. Moore and Peterson. "Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing." Hungerford

<u>Mechanical Corp. v. Hobson</u>, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991).

Based upon the lengthy delay between the time of Keesee's compensable accident and the first documentation of her neurological complaints and upon the opinions of Drs. Stamoulis and Wood, we cannot say as a matter of law that Keesee's evidence sustained her burden of proof.

For these reasons, we affirm the commission's decision.

<u>Affirmed.</u>